**Ninth Circuit Court of Appeals No. 24-4818**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee**

**vs.**

**GABRIEL COWAN METCALF,**

**Defendant-Appellant**

---

**REPLY BRIEF OF DEFENDANT-APPELLANT**
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION
DISTRICT COURT NO. CR-23-103-BLG-SPW
SUSAN P. WATTERS
UNITED STATES DISTRICT COURT JUDGE

<div style="margin-left:40%">

RACHEL JULAGAY
Federal Defender, District of Montana
**\*RUSSELL A. HART**
**\*EDWARD WERNER**
Assistant Federal Defender
Federal Defenders of Montana
175 North 27th Street, Ste. 401
Billings, MT 59101
Telephone: (406) 259-2459
    \*Counsel for Defendant-Appellant

</div>

SUBMITTED: March 24, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................i

TABLE OF AUTHORITIES ....................................................... ii

I.     INTRODUCTION ...........................................................1

II.    MONTANA LICENSURE ................................................3

III.   MR. METCALF'S CONSTITUTIONAL CLAIM ........................................6

IV.   CONCLUSION.............................................................16

V.    CERTIFICATE OF COMPLIANCE .........................................17

VI.   CERTIFICATE OF SERVICE ................................................18

# TABLE OF AUTHORITIES

<u>TABLE OF CASES</u>                                                    <u>Page</u>

<u>Federal Cases</u>

*Heller v. District of Columbia*,
 554 U.S. 570 (2008)…………………………………………………..*passim*
*New York State Rifle & Pistol Association v. Bruen*,
 142 S. Ct 2111 (2022) ……………………………….……………….*passim*
*United States v. Tait,*
 202 F.3d 1320 (11th Cir. 2000)…………...……………..……………….4, 5
*Wolford v. Lopez,*
 116 F.4th 959 (9th Cir. 2024)……………….……………………..7, 8, 9
*United States v. Guzman-Montanez*,
 756 F.3d 1, 10-12 (1st Cir. 2014)……………….…………………….…..11
*United States v. Rahimi*,
 144 S. Ct. 1889 (2024)……………………………………………..11, 12, 13
*United States v. Class*,
 930 F.3d 460 (D.C. Cir. 2019) ……….……………………………14, 15


<u>STATUTES AND RULES</u>

<u>Federal Statutes</u>
18 U.S.C. § 922(q)(2)(A)……………………………………………………*passim*
18 U.S.C. §922(q)(2)(B)(i)……………………………..…………………….2, 3
18 U.S.C. §922(q)(2)(B)(ii)……………………………..…………………...5, 10
18 U.S.C. §922(q)(2)(B)(iii)……………………………………………..…..10
18 U.S.C. § 922(g)(8)………………………………………………………..13

<u>State Statutes</u>
Mont. Code Ann. § 45-8-360………………………………………….....4, 5, 6

Ninth Circuit Court of Appeals No. 22-30050

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee

vs.

GABRIEL COWAN METCALF,

Defendant-Appellant

---

## REPLY BRIEF OF DEFENDANT-APPELLANT

---

## INTRODUCTION

The Supreme Court, in *Heller*, determined the District of Columbia's requirement that properly registered firearms kept in the home be unloaded and locked violated the Second Amendment because it was inconsistent with the Constitution's "guarantee [of] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Such a requirement, said the Court, "makes it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and is hence unconstitutional." *Id*. at 630.

1

The Gun Free School Zones Act (the "Act"), as it has been applied to Mr. Metcalf, prohibits the possession of a firearm within 1,000 feet of any "school's grounds" in the United States unless the firearm is locked or stored in a container. The Act also exempts from this prohibition any firearm that is possessed "on private property", but once a person living within a "school zone" steps onto the sidewalk their Second Amendment right is restricted in a manner identical to the regulation of firearms kept in the home that was struck down by the Supreme Court in *Heller* as the Act has been applied to Mr. Metcalf. 18 U.S.C. § 922(2)(B)(i).

Mr. Metcalf has not argued that he was prosecuted for possessing a functional firearm on his property within the protections of 18 U.S.C. § 922(2)(B)(i). Mr. Metcalf's Constitutional basis for relief lies in *Bruen's* recognition of the right to bear arms for self-defense in the public spaces which run across and stretch immediately beyond his private property. In *Bruen*, the Supreme Court determined that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense ***outside*** the home." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022) (emphasis added). Mr. Metcalf respectfully asserts that the rights guaranteed by the Second Amendment as articulated in *Bruen* and *Heller* exist on the sidewalk that crosses his property line.

When it comes to Mr. Metcalf's Constitutional claim, the question for this Court is whether the Act's as-applied prohibition on Mr. Metcalf's carrying of a

2

functional firearm off of his private property – which lies within 1,000 feet of a "school's grounds" – but not onto the grounds of any school, is tolerated by the Second Amendment.  The holdings of *Heller* and *Bruen* dictate that it is not.

## I.  Montana Licensure

In its Answer, the United States likened §922(q) more "to a licensing requirement than [] a ban".  Ans. Br. pg. 32.  "When a law-abiding citizen is on their own property, the statute is not a ban.  And even when a law-abiding citizen is in a state in which he is not licensed, the statute is more akin to a transitory storage requirement than to a ban".  *Id*. at pg. 32-33.  However, this issue exists on appeal because the United States successfully argued to the District Court that, even though Mr. Metcalf possessed such a license from the State of Montana, the license issued by his state was insufficient to protect anyone from prosecution under the Act even though the license explicitly purported to that.

This prosecution is a direct product of the attention Mr. Metcalf received for standing armed on the yard in front of his home in August of 2023.[1]  The Government agrees <u>that</u> conduct was constitutionally protected due to the existence of 18 U.S.C. § 922(q)(2)(b)(i) and is not part of the offense conduct.  Ans. Brf. pg. 32.  Mr. Metcalf then stepped onto the sidewalk that ran across his property while

---

[1] "Man with rifle near school".  *Billings Gazette, August 23, 2023*, print edition. (article no longer online)

engaged in identical conduct.  He did so in a state that purported to have granted him "a license to do so", specifically pertaining to the Gun Free School Zones Act.  Mont. Code Ann. § 45-8-360.  The United States has now convicted Mr. Metcalf of committing his offense when he took his first step onto that sidewalk.

Given the District Court's holding, the Act authorizes the arrest of any Montana citizen who passes through "almost the entirety of every urban location in the United States" while armed.  ER-84–85.  Montana's citizens had no reason to suspect that what Mr. Metcalf has been convicted of might be considered a criminal offense given the laws of the United States and the state of Montana until the novel theory of prosecution upon which his conviction rests was first advanced by the United States in this case[2].

In *United States v. Tait*, 202 F.3d 1320 (11th Cir. 2000), the Eleventh Circuit reasoned that "while the Alabama law is extremely lenient, it is nonetheless the only pertinent law.  Alabama has chosen its laws, and these are the only laws which determine whether the federal statute's exception applies.  Alabama is free to set forth its own licensing requirements, and Congress chose to defer to those licensing

---

[2] "Billings man accused of illegal possession of firearm in school zone".  *DOJ Press Release, August 25, 2023*. "The sidewalk and streets in front of Metcalf's residence are public property within 1,000 feet from the school and are a 'school zone' as defined in federal statutes."  https://www.justice.gov/usao-mt/pr/billings-man-accused-illegal-possession-firearm-school-zone

requirements when it established 'qualified under law' as its criterion for the exception to the Gun-Free School Zones Act." *Tait*, at *1324*.

Mr. Metcalf respectfully submits that the reasoning of *Tate* must apply to Montana's § 45-8-360 despite its similar leniency. Congress chose to defer completely to the states on this issue, it is the only pertinent law, and it is the only law that determines whether the exception of §922(q)(2)(B)(ii) applies in Montana. To hold that the law is insufficient to protect Montana's citizens from prosecution under the Act as it explicitly purports to do would expose thousands of citizens to the possibility of criminal prosecution for exercising a constitutional right, in compliance with the State's laws, in the most significantly traversed parts of the State.

The effect of the District Court's Order would necessitate an interpretation of 18 U.S.C. § 922(q)(2)(B)(ii) as requiring that each state implement a licensing scheme that invites any citizen mindful enough to reason they will inevitably pass through a school zone to show cause why they are "qualified under law" to receive a license to carry a firearm. In the context of §922(q)(2)(A), such a license is a practical necessity for a citizen to be allowed by his government to arm himself for self-defense outside of the home in any semi-urbanized area. As it stands following the District Court's Order, no license may be had in Montana, qualified or not.

Congress deferred this matter completely to the states. Montana citizens, since 1995, have been explicitly told by Montana's government that it had granted all persons not disqualified from lawful firearm possession a license to carry a firearm within a federal gun-free school zone. Any person other than a violent felon who resides in Montana and reads these two laws as they exist yet today has every reason to believe they fall firmly within the protection of 18 U.S.C. § 922(q)(2)(B)(ii) and cannot be prosecuted for violating the Act.

That the United States' rejection of that law's adequacy would result in the conviction of any Montana citizen who lives within 1,000 feet of a school while exercising a constitutionally protected right in the public spaces immediately outside his home underscores what Mr. Metcalf discerns as the reasoning of *Tait*: Congress delegated the licensing requirement completely to the states and the Courts should not, as a general principle, uphold a conviction against a person to whom the state has granted a license because of perceived shortcomings in the licensing law itself. It was not Mr. Metcalf's actions in 2023, but the combined yet discoordinated actions of Congress and the State of Montana between 1990 and 1997 that created that situation.

## II.    Metcalf's Constitutional Claim

As the Act has been applied in this case, Gabriel Metcalf cannot leave his home with a firearm that he could readily use in the case of confrontation. The

District Court determined that this prohibition covers not just the sidewalk immediately outside Mr. Metcalf's home, but "almost the entirety of every urban location in the United States, including many places that have nothing to do with the closest school". ER-84–85.

Given that finding, the District Court's ultimate ruling, and the Supreme Court's decisions in *Heller* and *Bruen*, Mr. Metcalf emphasizes that the Act currently serves as a restriction on the possession of a functional firearm that can be readily used for self-defense in the event of confrontation directly outside his home that is identical to the restriction struck down by the *Heller* Court concerning firearms kept in the home. *Bruen* clarified that the rights articulated in *Heller* also exist outside of the home: "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms." *Bruen*, at 4.

In support of its argument that the Second Amendment tolerates the application § 922(q)(2)(A) against Mr. Metcalf in this manner, the United States argues that the sidewalk in front of Mr. Metcalf's house is a "sensitive place", thus removing his conduct from that which is protected by the Second Amendment. Ans. Br. pg. 13.

The Government points to the recent decision in *Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) as an example of this Court's support for "nearly identical buffer zones" to §922(q)(2)(A)'s broad prohibition against the possession of firearms

7

within 1,000 feet of a school's grounds. The "buffer zone" portion of *Wolford* concerned whether a ban on "parking areas associated with [] sensitive places" is constitutional where plaintiffs had moved for preliminary injunctions seeking to enjoin parts of new laws concerning the possession of firearms in Hawaii and California in certain types of "sensitive" areas. *Wolford v. Lopez*, at 989. The Court's *Wolford* opinion is far more nuanced than the Government's characterization:

> Some parking areas—such as a parking garage located in the basement of a courthouse or jail—are likely so intertwined with the main structure as to be considered part of the sensitive area itself. Other parking areas—such as a student-only parking area at a school or a fenced, gated, parking lot at a jail or nuclear power plant—likely fall within a reasonable buffer zone such that firearms may be prohibited there. We agree with those courts that have held that, depending on the factual circumstances, firearms may be prohibited at some parking areas connected to sensitive places.

*Wolford v. Lopez*, 116 F.4th 959, 989

Parking areas that serve to function a traditional "sensitive place" are fundamentally different from the sidewalk that runs across Gabriel Metcalf's property. Mr. Metcalf's home and the sidewalk that runs across his property do not function to exclusively serve Broadwater Elementary. They are like every other home and sidewalk in the city, but, like thousands of houses in Billings, there is a school within 1,000 feet.

8

The Plaintiffs seeking an injunction in *Wolford* claimed that the regulations were facially unconstitutional, compared with Mr. Metcalf's as-applied challenge. Consequently, the Plaintiffs were required to show that the regulations were "unconstitutional in every conceivable application" or that the law "seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Id.* at 984. Having no defendant against whom the law had yet been applied in any of the unconstitutional manners hypothesized by the Plaintiffs, this Court determined that the law *could be* applied in a constitutional manner in some conceivable application once it became effective. *Id.* at 984.

In *Wolford*, this Court annotated its holding with a footnote that is of interest in this case:

> To the extent that Plaintiffs argue that the aggregate effect of Hawaii's law is to ban firearms across much of Maui County, such that the law must be unconstitutional, we reject that argument for two main reasons. First, because we affirm parts of the injunction, and because Plaintiffs have raised only facial challenges to most aspects of the law at this preliminary stage, the precise reach of Hawaii's law is uncertain. Second, *because Plaintiffs may take their firearms onto the public streets and sidewalks throughout Maui County (and elsewhere in Hawaii), as well as into many commercial establishments and other locations, the situation in this case is unlike the argument that Bruen rejected, which would have meant, effectively, that firearms could be banned from the entire island of Manhattan.*

*Wolford*, at 984, n4. (emphasis added)

The Government points to protections against "accidental" violations of §922(q)(2)(A) based on the structure of the statute. The first, the United States

argues, is found in out-of-circuit caselaw concerning the *mens rea* requirement that possession occur "at a place that the individual knows, or has reasonable cause to believe, is a school zone".  Ans. Br. pg. 35, quoting 18 U.S.C. § 922(q)(2)(A) and *United States v. Guzman-Montanez*, 756 F.3d 1, 10-12 (1st Cir. 2014).  Second, the Government argues that the statute contains exemptions for "individuals with qualifying licenses" and one that allows for the carrying of an unloaded firearm that is "locked in a container or a locked firearms rack that is on a motor vehicle".  *Id.*, citing 18 U.S.C. § 922(q)(2)(B)(ii-iii).

The Government's argument concerning the license exception is particularly striking, as Mr. Metcalf had a license that the United States has successfully argued to the District Court was insufficient to prevent his prosecution.  The requirement that Mr. Metcalf unload and lock his firearm every time he steps off his property amounts to a ban that is undeniably at odds with the combined holdings of *Heller* and *Bruen*.  And, when it comes to the protections of the *mens rea* requirement, Mr. Metcalf's exchange with the Court during his change of plea hearing undercuts this argument:

THE COURT: So, Mr. Metcalf, having heard the government's offer of proof, is there anything in that offer of proof that you disagree with?

THE DEFENDANT: Um, at the time I did not realize I was in a school zone.

THE COURT: Okay. But do you understand that whether you knew that or not is not a defense?

THE DEFENDANT: I do.

ER_58

Mr. Metcalf enjoyed neither of the two protections the Government has raised in defense of its application of the Act to Mr. Metcalf. That he could have unloaded and locked his firearm is not a protection, but a restraint on what Mr. Metcalf could otherwise do with or without a license – carry a usable firearm for self-defense – if there were not a federal law that banned him from doing so due to his home's proximity to a traditional "sensitive place".

Since the District Court's Order denying Mr. Metcalf's Motion to Dismiss Indictment, the United States Supreme Court issued its decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). In its Answer, the United States cites to language throughout *Rahimi* clarifying that a proffered historical analogue must be at least "relevantly similar" to the challenged provision for the Government to meet its burden. Ans. Brf. at pg. 22, 30, 33. In response to Mr. Metcalf's statement that the Act creates a federal jurisdiction of every urbanized area of the country for the

11

purpose of banning firearm possession, the United States points to *Rahimi*'s caution of "'focus[ing] on hypothetical scenarios' where a challenged statute 'might raise constitutional concerns'". Ans. Brf. at pg. 35.

The District Court's Order contained a finding that the Act's prohibition on possession of a functional firearm covers almost the entirety of every urban area in the United States, and Mr. Metcalf was ultimately convicted of a federal firearm offense for carrying a firearm onto the sidewalk outside his house after local authorities had determined he wasn't committing a crime. This is not a "hypothetical concern" as the Act has been applied to Mr. Metcalf.

The Act's real-world application to Mr. Metcalf is at odds with the "metrics for determining whether [it] is consistent with historical regulations" articulated in *Rahimi* – "how and why the regulations burden a law-abiding citizen's right to armed self-defense". *Rahimi*, at 750. The Act prevents any individual who lives within 1,000 feet of a school's grounds from leaving their property with a firearm that is of ready use for self-defense. It is not a "transitory storage requirement".

"A historical law must satisfy both considerations to serve as a comparator. While a historical law need not be a 'historical twin,' it must be 'well-established and representative' to serve as a historical analogue." *Id.* (citations omitted). Critically, the Supreme Court in *Rahimi* cautioned that "[e]ven when a law regulated arms-bearing for a permissible reason, it may not be compatible with the right if it

does so to an extent beyond what was done at the founding," *Id*. at 1898. Central to the Court's holding in *Rahimi* was that the defendant had been temporarily disarmed due to a judicial finding that he posed a credible threat to another individual. By comparison, the Act is broad, not conduct based, and – as applied to an individual who lives in a state with an invalid licensing law – absolute in its prohibition on leaving his property with a working firearm for self-defense.

In *Heller*, the Supreme Court held that the District of Columbia's "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violates the Second Amendment. *Heller*, at 635. In *Bruen*, the Court clarified that "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms, and the definition of 'bear' naturally encompasses public carry. Moreover, the Second Amendment guarantees an 'individual right to possess and carry weapons in case of confrontation,' and confrontation can surely take place outside the home." *Bruen*, at 4. (citations omitted).

When defendant Rahimi argued that 18 U.S.C. § 922(g)(8) was unconstitutional because it bars individuals with restraining orders from possessing guns in the home, the Supreme Court harkened back to its dicta in *Heller* "that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, at 699, citing *Heller* at 627. Mr.

Metcalf belongs to no class of citizens except those who live within 1,000 feet of a "school's grounds". That those individuals do not enjoy the same rights under the Second Amendment as individuals who live elsewhere does not square with the holdings of *Heller*, *Bruen*, or *Rahimi*.

There is no historical analogue for the Act's expansive buffer zone that applies within 1,000 feet of the most common type of "sensitive place" in the country, year around, and regardless of whether that place is being used for the purpose that makes it sensitive. In its Answer, the United States points briefly to the D.C. Circuit opinion of *United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019) as an example of a sister Circuit's recent upholding of a modern regulation that restricts the possession of firearms around a traditional sensitive place. In *Class*, a defendant appealed his conviction for violating the federal law prohibiting possession of a firearm on the grounds of the United States Capitol after he'd parked a vehicle containing three guns in a parking lot near the Capitol in a spot that was reserved for employees of the House of Representatives. *Class*, at 462.

The D.C. Circuit determined – pre-*Bruen* and using means-end scrutiny – that the application of that law against defendant Class did not violate the Second Amendment. In so holding, the D.C. Circuit "conclude[d] that [the parking lot] is sufficiently integrated with the Capitol for *Heller I's* sensitive places exception to apply. Accordingly, we conclude that the Second Amendment does not give Class

the right to bear arms in the Maryland Avenue lot." *Id*. at 464. Unlike the issue in *Class*, the sidewalk that runs past Mr. Metcalf's home was not in anyway "integrated" with the school across the street during the summer months of 2023.

Public schools are numerous and spread strategically throughout every community in the United States to be as close as possible to residential population centers, unlike the Capitol which sits in one location surrounded by other government buildings. Amaci California Rifle & Pistol Association, Inc., et. al presented this Court with a map demonstrating the various locations of areas that qualify as "school grounds" in Billings, Montana. ACRPA brf. at pg. 20. While that map appears comprehensive as to the elementary schools in that portion of the city, it leaves out two high schools, three middle schools, and both four-year universities in Billings[3]. The District Court was correct in its assessment of the Act's breadth, and the distinction between the Act and the regulation at issue in *Class* is stark.

The "how" of the Act, as it has been applied to Mr. Metcalf, is to create a federal ban on the possession of a firearm that is ready to use for self-defense in almost the entirety of every urbanized area of the Nation. There has never been

---

[3] Billings West High School, Billings Central Catholic High School, Lewis and Clark Middle School, Will James Middle School, Ben Steele Middle School, Rocky Mountain College, and Montana State University, Billings.

another law of the United States that is relevantly similar to "how" the Act restricts firearm possession as it has been applied to Mr. Metcalf.

## III. CONCLUSION

Despite the controversy that has surrounded this law since its inception, the Gun Free School Zones Act, following its post-*Lopez* amendment, has survived through *Heller*, *McDonald*, and *Bruen* precisely because it has been used cautiously. As it has been applied to Mr. Metcalf, any person who lives within 1,000 feet of a school may not leave their property with a working firearm. As noted by the District Court, the ban would disarm most of the millions of Americans who live within a "school zone" if it were consistently applied in this manner. Pursuant to its Order, it is no defense that one is licensed to possess a firearm within a school zone by the State of Montana to do so.

This application cannot survive given the Supreme Court's decisions in *Heller* and *Bruen*.

RESPECTFULLY SUBMITTED this 24th day of March, 2025.

/s/ Russell A. Hart
RUSSELL A. HART
Federal Defenders of Montana
Counsel for Defendant

16

## IV.  CERTIFICATE OF COMPLIANCE

I hereby certify that this Opening Brief of Defendant-Appellant is in compliance with Ninth Circuit Rule 32(a).  The Brief's line spacing is double spaced. The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14 point size and contains less than 14,000 words at an average of 280 words (or less) per page, including footnotes and quotations.  (Total number of words: 3,708 excluding tables and certificates).

DATED this 24th day of March, 2025.

/s/ Russell A. Hart_____
RUSSELL A. HART
Federal Defenders of Montana
     Counsel for Defendant

## VI.  CERTIFICATE OF SERVICE
### Fed.R.App.P. 25

I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

GABRIEL COWAN METCALF
430 Broadwater Avenue
Billings, MT 59101

   Defendant-Appellant

        /s/ Russell A. Hart
        RUSSELL A. HART
        Federal Defenders of Montana
         Counsel for Defendant